UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**KAREN ALICE COLE,**

    **Plaintiff,**

v.                                                        **Case No. 8:24-cv-1088-AAS**

**LELAND DUDEK, Commissioner
of Social Security,**[1]

    **Defendant.**
_____/

## ORDER

Plaintiff Karen Alice Cole requests judicial review of a decision by the Commissioner of Social Security (Commissioner) denying her claim for disability insurance benefits (DIB) under the Social Security Act, 42 U.S.C. Section 405(g). After reviewing the record, including the transcript of the proceedings before the Administrative Law Judge (ALJ), the administrative record, the pleadings, and the memoranda the parties submitted, the Commissioner's decision is **AFFIRMED**.

**I.   PROCEDURAL HISTORY**

Ms. Cole applied for DIB on April 22, 2021, and alleged disability

---

[1] Leland Dudek became the Acting Commissioner of Social Security on February 16, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Leland Dudek should be substituted for Martin O'Malley as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

beginning on February 1, 2017. (Tr. 71, 206–10). Ms. Cole's onset date was later amended to February 28, 2020. (Tr. 34). Disability examiners denied Ms. Cole's applications initially and on reconsideration. (Tr. 70–95). At Ms. Cole's request, the ALJ held a hearing on September 12, 2023, (Tr. 28–58, 184). The ALJ issued an unfavorable decision to Ms. Cole on December 28, 2023. (Tr. 7–27).

On March 5, 2024, the Appeals Council denied Ms. Cole's request for review, making the ALJ's decision final. (Tr. 1–5). Ms. Cole requests judicial review of the Commissioner's final decision. (Doc. 1).

## II.    NATURE OF DISABILITY CLAIM

### A.    Background

Ms. Cole was 50 years old on her alleged onset date and 53 years old on her date last insured. (Tr. 19, 209). Mr. Cole obtained a high school equivalency diploma, completed cosmetology school, and worked as a restaurant manager, a front desk receptionist, an insurance representative, and a patient representative. (Tr. 19, 235–36). Ms. Cole alleged disability due to fibromyalgia, post-traumatic stress disorder, bipolar disorder, depression, a back impairment, neuropathy, insomnia, restless leg syndrome, and migraines. (Tr. 44, 234).

### B.    Summary of the Decision

The ALJ must follow five steps when evaluating a disability claim.[2] 20 C.F.R. § 404.1520(a). First, if a claimant is engaged in substantial gainful activity,[3] she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant has no impairment or combination of impairments that significantly limit her physical or mental ability to perform basic work activities, she has no severe impairment and is not disabled. 20 C.F.R. § 404.1520(c); *see McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986) (stating that step two acts as a filter and "allows only claims based on the most trivial impairments to be rejected"). Third, if a claimant's impairments fail to meet or equal an impairment in the Listings, she is not disabled. 20 C.F.R. § 404.1520(d). Fourth, if a claimant's impairments do not prevent her from doing past relevant work, she is not disabled. 20 C.F.R. § 404.1520(e). The ALJ determines the claimant's residual functional capacity (RFC) at this fourth step.[4] *Id*. Fifth, if a claimant's impairments (considering her RFC, age, education, and past work) do not prevent her from performing work in the national economy, she is not disabled. 20 C.F.R. § 404.1520(g).

---

[2] If the ALJ determines the claimant is disabled at any step of the sequential analysis, the analysis ends. 20 C.F.R. § 404.1520(a)(4).

[3] Substantial gainful activity is paid work that requires significant physical or mental activity. 20 C.F.R. § 404.1572.

[4] A claimant's RFC is the level of physical and mental work she can consistently perform despite her limitations. 20 C.F.R. § 404.1545(a)(1).

3

The ALJ determined Ms. Cole did engage in substantial gainful activity through her date last insured. (Tr. 13) The ALJ found Ms. Cole had these severe impairments: disorder of the skeletal spine, peripheral neuropathy, anxiety, obsessive-compulsive disorder, depression, and trauma. (*Id.*). However, the ALJ found that none of Ms. Cole's impairments or the combination of her impairments met or medically equaled the severity of an impairment in the Listings. (Tr. 13–15).

The ALJ found Ms. Cole had the RFC to perform a reduced range of light work,[5] except:

> [Ms. Cole] was limited to frequently climbing ramps and stairs; occasionally climbing ladders, ropes, or scaffolds; frequently balancing; occasionally stooping; frequently kneeling, crouching, crawling, and reaching overhead; she was able to understand, carry out and remember simple and complex instructions; she could perform simple and complex tasks; she could not interact with the public; she could occasionally interact with coworkers and supervisors; she could not perform tandem tasks; she required a low stress job, defined as having only occasional decision-making and no more than occasional changes in the work setting.

(Tr. 13–15).

---

[5] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time." 20 C.F.R. § 404.1567(b).

4

Based on these findings, the ALJ determined Ms. Cole could not perform her past relevant work. (Tr. 19). The ALJ then determined Ms. Cole could perform other jobs existing in significant numbers in the national economy. (Tr. 15–19). Specifically, Ms. Cole could work as a collator, a routing clerk, and a coin machine collector. (Tr. 20). As a result, the ALJ found that Ms. Cole was not disabled. (Tr. 20–21).

## III. ANALYSIS

### A. Standard of Review

Review of the ALJ's decision is limited to reviewing whether the ALJ applied correct legal standards and whether substantial evidence supports her findings. *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988); *Richardson v. Perales*, 402 U.S. 389, 390 (1971). Substantial evidence is more than a mere scintilla but less than a preponderance. *Dale v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005) (citation omitted). In other words, there must be sufficient evidence for a reasonable person to accept as enough to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citations omitted). The Supreme Court recently explained, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).

A reviewing court must affirm a decision supported by substantial evidence "even if the proof preponderates against it." *Phillips v. Barnhart*, 357

5

F.3d 1232, 1240 n.8 (11th Cir. 2004) (citations omitted). The court must not make new factual determinations, reweigh evidence, or substitute its judgment for the Commissioner's decision. *Id.* at 1240 (citation omitted). Instead, the court must view the whole record, considering evidence favorable and unfavorable to the Commissioner's decision. *Foote*, 67 F.3d at 1560; *see also Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (citation omitted) (stating that the reviewing court must scrutinize the entire record to determine the reasonableness of the Commissioner's factual determinations).

### B.   Issues on Appeal

Ms. Cole raises two issues on appeal: (1) whether the ALJ erred at step two by finding Ms. Cole's migraines non-severe, and (2) whether the ALJ's alleged failure to properly consider Ms. Cole's migraines resulted in an erroneous RFC assessment. (Doc. 14, p. 3, 6).

### 1. Whether Substantial Evidence Supports the ALJ's Findings in Step Two of the Sequential Evaluation Process

Ms. Cole argues the ALJ failed to properly consider the severity of her migraines at the second step of the sequential evaluation process. (Doc. 14, p. 6). In response, the Commissioner contends substantial evidence supports the ALJ's findings at step two. (Doc. 16, pp. 10–11).

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe, medically determinable impairment or a

severe combination of impairments. 20 C.F.R. § 404.1520(c). Step two serves as a filter, requiring immediate denial of a claim where no severe impairment is shown. *See Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987). A finding of any severe impairment, regardless of whether it qualifies as a disability or results from a single impairment or a combination of impairments, will satisfy the requirement at step two. *Id.*; *see Packer v. Comm'r, Soc. Sec. Admin.*, 542 F. App'x 890, 892 (11th Cir. 2013) ("[S]ince the ALJ proceeded beyond step two, any error in failing to find that Packer suffers from the additional severe impairments of degenerative joint disease of the right knee or varicose veins would be rendered harmless.").

To qualify as severe, a medically determinable impairment must significantly limit an individual's physical or mental capacity to perform basic work activities. 20 C.F.R. §§ 404.1520(b), 404.1522(a). In a disability claim, the plaintiff must establish the severity of an impairment by demonstrating the effect of the impairment on her ability to work. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *see McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986) ("[T]he 'severity' of a medically determined disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality."). In the Eleventh Circuit, a mere diagnosis of an impairment is insufficient to prove severity at step two. *See Moore v. Barnhart*, 405 F.3d 1208, 1213 (11th Cir.

7

2005) ("[T]he mere existence of [Plaintiff's] impairments does not reveal the extent to which they limit her ability to work or undermine the ALJ's determination in that regard."); *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) ("[A] diagnosis or a mere showing of a deviation from purely medical standards of bodily perfection or normality is insufficient [to prove disability]; instead, the claimant must show the effect of the impairment on her ability to work.").

Ms. Cole failed to establish her migraines constitute a severe impairment. Although the record demonstrates Ms. Cole has a diagnosis and medical history of migraines predating the period of coverage, Ms. Cole did not demonstrate any resulting functional loss during the relevant period. The relevant period for Ms. Cole's disability claim is from February 28, 2020 (the amended disability onset date) through June 30, 2022 (the date last insured). In Ms. Cole's May 2021 application for disability benefits, she did not allege her migraine headaches limited her ability to work. (Tr. 234). After the initial denial of Ms. Cole's disability claim, Ms. Cole updated her list of medications to include Sumatriptan, which is used to treat nerve-related migraines. (Tr. 289). However, Ms. Cole did not mention migraines when asked whether she had developed any new or different mental or physical conditions that affected her ability to work. (Tr. 283, 306). Although the record includes several medical evaluations that mention migraines, those records predate the relevant period.

(*See* Tr. 242, 244, 368–70, 419). In addition, they include no subjective or clinical reports of functional loss caused by migraines. (*Id.*).

During the relevant period, Ms. Cole reported a history of migraines at a neurology visit on March 11, 2022, and noted a prescription for migraine medication. (Tr. 86, 91, 289). In December 2021 and March 2022, Ms. Cole stated that, approximately twice a month, she "managed" mild headaches that sometimes became migraines, but she did not require medication to alleviate her symptoms. (Tr. 1200, 1264). From April 2021 to February 2022, Ms. Cole often denied experiencing any headaches. (*See* Tr. 724, 778, 795, 821, 846, 851, 856, 860, 863–64, 868, 873, 876, 878, 880, 883, 932, 940, 973–75, 977, 981, 984, 991, 1164, 1225, 1228). In September 2023, Ms. Cole alleged the worsening of her headaches at an administrative hearing. (Tr. 44). This assertion came more than a year after the expiration of Ms. Cole's disability insurance and does not establish how migraines diminished her ability to work. As the Commissioner noted, this assertion did not bear on the disability claim but demonstrated the severity of Ms. Cole's condition after the relevant period lapsed.

Along with the reported mildness and lack of treatment for migraines, two medical consultants— Phillip Matar, M.D., and Gary Smith, M.D.— found Ms. Cole's migraines to be non-severe. (Tr. 73, 75–77, 87, 90, 91). These administrative medical findings, which the ALJ found persuasive, support the ALJ's overall determination that Ms. Cole's migraines were non-severe. The

ALJ attested to a thorough review of the record, the evidence of Ms. Cole's impairments, and the relevant listing criteria before determining severity. (Tr. 12, 13, 15). And, the ALJ stated, after considering both severe and non-severe impairments, he found the non-severe physical impairments to cause "no greater workplace functional limitations than those found herein." (Tr. 13). The ALJ made these assurances several times in his opinion. (Tr. 13–16); *see Tuggerson-Brown v. Comm'r of Soc. Sec.*, No. 13-14168, 572 F. App'x 949, 951–52 (11th Cir. 2014) (per curiam) ("[T]he ALJ stated that he evaluated whether [plaintiff] had an 'impairment or combination of impairments' that met a listing and that he considered 'all symptoms' in determining her RFC. Under our precedent, those statements are enough to demonstrate that the ALJ considered all necessary evidence.").

Based on minimal treatment records about migraines, a lack of explanation of any functional loss caused by migraines, medical experts' findings that Ms. Cole's migraines were non-severe, and Ms. Cole's indication that her migraines were manageable, the ALJ reasonably concluded "[t]here is simply nothing to suggest [Ms. Cole's migraines] cause more than a minimal limitation in the ability to perform basic work activities." (Tr. 13). *See Hickman v. Comm'r of Soc. Sec.*, No. 6:22-cv-2267-PGB-LHP, 2023 WL 9197938, at *4 (M.D. Fla. Dec. 18, 2023) ("[W]hile Claimant references numerous medical records that discuss a diagnosis of headaches, Claimant points to no other

10

restrictions in her briefing (nor cites to any medical records) as it relates to functional limitations due to headaches."). Thus, the court concludes the ALJ's determination at step two is supported by substantial evidence.

### 2. Whether the ALJ Properly Assessed Ms. Cole's RFC

The second issue raised on appeal challenges the validity of the ALJ's RFC analysis. Ms. Cole argues that the ALJ improperly failed to consider all limitations stemming from her impairments (severe and non-severe) in the RFC assessment. (Doc. 14, p. 7). In response, the Commissioner contends that substantial evidence supports the ALJ's RFC assessment. (Doc. 16, pp. 12–19).

A claimant's RFC is the maximum activity she can do despite limitations caused by her impairments. *See* 20 C.F.R. § 404.1545(a). The RFC is not a medical opinion, but an administrative assessment of functional capacity made by an ALJ. *See* 20 C.F.R. § 404.1546(c). RFC assessment is based on all relevant evidence, including medical records, medical source opinions, prior administrative medical findings, and the individual's subjective allegations and descriptions of her limitations. *See* 20 C.F.R. § 404.1545(a)(3). The ALJ must consider all severe and non-severe impairments in the RFC assessment. *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268 (11th Cir. 2019).

At step two of the evaluation, the ALJ found Ms. Cole's diagnosed, non-severe impairments to cause no additional functional limitations. *See Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984) (finding non-severe impairments to

11

have such minimal effects that they are unlikely to interfere with one's ability to work); *Sprague v. Colvin*, No. 8:13-CV-576-T-TGW, 2014 WL 2579629, at *6 (M.D. Fla. June 9, 2014) (noting that a non-severe impairment often will not result in functional limitation). The ALJ "considered all symptoms and the extent to which these symptoms [could] reasonably be accepted as consistent with the objective medical evidence and other evidence." (Tr. 15); *See Tuggerson-Brown*, 572 F. App'x at 951 (holding an ALJ's statements that he considered the whole record are sufficient to demonstrate that he considered all necessary evidence). The ALJ then determined Ms. Cole had the residual functional capacity to perform light work with various restrictions. (*Id.*).

The ALJ demonstrated his careful consideration of the entire record, including all severe and non-severe impairments, in his narrative summary of the RFC assessment. (Tr. 13, 15). The ALJ acknowledged Ms. Cole's reported symptoms, summarizing her physical and cognitive difficulties with lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, climbing stairs, remembering things, using her hands, completing tasks, understanding, following instructions, and getting along with others. (Tr. 15–16). Then, the ALJ evaluated the extent to which objective medical evidence supported Ms. Cole's statements about the "intensity, persistence, and limiting effects" of her symptoms. (Tr. 16).

Medical evidence and treatment records revealed normal

musculoskeletal, neurological, extremity, and psychological findings. (Tr. 17–18). The ALJ noted Ms. Cole's independence in routine activities (e.g., personal care, meal preparation, transportation to doctor's appointments) and her endorsement of the efficacy of medications in managing her symptoms. (Tr. 14, 16–18). The ALJ determined "objective and clinical evidence of record fail[ed] to support the severity of functional limitation alleged by the claimant . . . ." (Tr. 18). The ALJ properly considered the limiting effects of Ms. Cole's symptoms insofar as the record substantiated her assertions. *See* 20 C.F.R. 404.1520c.

The ALJ's RFC determination is further supported by medical opinions and administrative medical findings, which he duly considered. (Tr. 18–19). First, the ALJ summarized several unpersuasive medical opinions and articulated why he would not adopt their findings into the analysis. For example, the ALJ disregarded physical findings from consultative examiner Jose Diaz, M.D., and psychological findings from Donna Donati-Waddell, Psy.D. (Tr. 18). In his reasoning, the ALJ noted the physical findings (suggesting Ms. Cole was limited to seated work only) were vague and unsupported by objective findings, specific limitations, or other medical evidence. (Tr. 18). The ALJ concluded the psychological findings (suggesting Ms. Cole's psychological difficulties significantly impaired her ability to work) were inconsistent with mostly regular psych evaluations of record and Ms.

13

Cole's account of the efficacy of medication in managing her symptoms. (Tr. 18).

Second, the ALJ described the persuasive medical findings in the record. (Tr. 18). Two agency psychologists, Catherine Nunez, Ph.D., and Janice Miller, Ph.D., determined Ms. Cole could perform a range of unskilled work. (Tr. 77–78, 91–93). On initial review, agency consultant Phillip Matar, M.D., determined Ms. Cole could perform light, unskilled work with additional postural and physical limitations. (Tr. 75–77). On reconsideration, agency consultant Gary Smith, M.D., affirmed Dr. Matar's findings. (Tr. 90–91). These administrative medical findings were consistent with the totality of evidence in the record and supported the ALJ's RFC assessment. (Tr. 18).

Objective medical evidence did not reveal additional functional limitations; Ms. Cole endorsed her ability to perform routine tasks and manage her symptoms; and the ALJ's findings were consistent with prior administrative findings. For these reasons, the court concludes the ALJ offered an adequate explanation, supported by substantial evidence, for not adding additional functional limitations to his RFC assessment.

## IV.   CONCLUSION

For the reasons stated, the Commissioner's decision is **AFFIRMED,** and the Clerk is directed to enter judgment for the Commissioner.

**ORDERED** in Tampa, Florida, on June 17, 2025.

*Amanda Arnold Sansone*
AMANDA ARNOLD SANSONE
United States Magistrate Judge